UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JANEL FLORES BAINES,                )       No. EDCV 07-1170-RC
                                    )
          Plaintiff,                )
                                    )       OPINION AND ORDER
     v.                             )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
          Defendant.                )
_____)

     Plaintiff Janel Flores Baines filed a complaint on September 25,
2007, seeking review of the Commissioner's decision denying her
applications for disability benefits.  The Commissioner answered the
complaint on February 4, 2008, and the parties filed a joint
stipulation on March 25, 2008.


                          **BACKGROUND**

                               **I**

     On January 5, 2005, plaintiff applied for disability benefits
under both Title II of the Social Security Act ("Act"), 42 U.S.C. §
423, and the Supplemental Security Income program ("SSI") of Title XVI

of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since January 3, 2003, due to back pain and hip injuries.  Certified Administrative Record ("A.R.") 12, 51-55, 63-64.  The plaintiff's applications were initially denied on June 2, 2005, and were denied again on October 14, 2005, following reconsideration.  A.R. 33-47. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge F. Keith Varni ("the ALJ") on January 26, 2007.  A.R. 30, 209-23.  On February 6, 2007, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 9-19.  The plaintiff appealed the decision to the Appeals Council, which denied review on July 26, 2007.  A.R. 4-8.

## II

The plaintiff, who was born on March 6, 1977, is currently 31 years old.  A.R. 51, 211.  She has an eleventh-grade education, has trained to be a certified nurse's assistant, and previously worked as a telephone service provider.  A.R. 56-62, 64-65, 68, 212, 214.

On January 9, 2003, plaintiff was hospitalized at the Arrowhead Regional Medical Center ("ARMC"), where she gave birth to a son, who weighed 12 pounds, 6 ounces.  A.R. 120-30, 208.  A pubiotomy[1] and symphysiotomy[2] were performed to aid the delivery.  A.R. 121, 127.  On

---

[1]   A pubiotomy is the "surgical separation of the pubic bone lateral to the median line."  Dorland's Illustrated Medical Dictionary, 1491 (29th ed. 2000).

[2]   A symphysiotomy involves "the division of the fibrocartilage of the symphysis pubis, in order to facilitate delivery, by increasing the diameter of the pelvis."  Id. at 1744.

January 17, 2003, plaintiff was doing well and walking without help.
A.R. 90.  On March 6, 2004, plaintiff was admitted to ARMC, where she
underwent a cesarean section and tubal ligation.  A.R. 107-19.

On December 30, 2004, Harold Luke, M.D., examined plaintiff and
diagnosed her with morbid obesity and right hip pain.  A.R. 136.
Lumbar spine x-rays taken January 23, 2006, were normal, while right
hip x-rays taken the same day showed at least 3 cm. of diastasis[3] of
the pubic symphysis, with no evidence of fracture.  A.R. 158-59.

On May 20, 2005, Buneri T. Sophon, M.D., examined plaintiff,
diagnosed her with a history of an operative cut in the pubic bone,
and opined plaintiff "does not have any significant physical
impairment and there are no functional limitations."  A.R. 139-43.

On May 31, 2005, nonexamining physician George G. Spellman, M.D.,
opined plaintiff can occasionally lift and/or carry 50 pounds,
frequently lift and/or carry 25 pounds, and can sit, stand and/or walk
for 6 hours in an 8-hour work day.  A.R. 147-54.  On September 26,
2005, nonexamining physician John Meek, M.D., agreed with this
assessment, stating there is no evidence of a severe physical
impairment.  A.R. 156.

On April 20, 2006, plaintiff was treated in the emergency room at

---

[3]   Diastasis means "a form of dislocation in which there is
a separation of two bones normally attached to each other without
the existence of a true joint; as in separation of the pubic
symphysis."  Dorland's Illustrated Medical Dictionary at 494.

1    Redlands Community Hospital for dysfunctional uterine bleeding and

2    dehydration.  A.R. 196-97.  Bilateral hip x-rays taken October 5,

3    2006, were negative, while pelvic x-rays demonstrated a 3-cm. pubic

4    diastasis, which appeared to be chronic, with mild associated

5    bilateral SI joint degenerative changes and a solitary metallic

6    surgical clip in the right upper pelvic tissues.  A.R. 185.  Plaintiff

7    was again seen in the emergency room on December 22, 2006, when she

8    was diagnosed with anemia, general malaise, and menorrhagia,[4] among

9    other things.  A.R. 186-87, 193-95.  An electrocardiogram was

10   abnormal, but chest x-rays were normal.  A.R. 191-92.

11

12        On June 6, 2006, plaintiff was examined at the New Millennium

13   Medical Associates, when she was diagnosed with depression, chronic

14   back pain, and obesity, and she was prescribed Wellbutrin.[5]  A.R. 174-

15   75.  However, plaintiff never filled the Wellbutrin prescription

16   because she "lost" it.  A.R. 173.

17

18        On January 22, 2007, Dennis M. Carden, D.O., stated:

19   //

20   _____

21        [4]  Menorrhagia, or hypermenorrhea, is "excessive uterine
     bleeding occurring at regular intervals; the period of flow being
22   of usual duration."  Dorland's Illustrated Medical Dictionary at
     853, 1086. 2000).
23

24        [5]  "Wellbutrin . . . is given to help relieve certain kinds
     of major depression.  [¶]  Major depression involves a severely
25   depressed mood (for 2 weeks or more) and loss of interest or
     pleasure in usual activities accompanied by sleep and appetite
26   disturbances, agitation or lack of energy, feelings of guilt or
     worthlessness, decreased sex drive, inability to concentrate, and
27   perhaps thoughts of suicide. . . ."  The PDR Family Guide to
     Prescription Drugs, 737 (8th ed. 2000).
28

                                   4

1    [Plaintiff] underwent a vaginal delivery of a 13 pound
2    infant on January 3, 2003.  [¶]  During the birth process,
3    her pelvis became separated.  This separation may have lead
4    [sic] to pelvic instability.  [Plaintiff] has received
5    orthopedic treatment and physical therapy.  [¶]  She is
6    currently in need of ambulatory assistance.  The duration of
7    this instability may be permanent.

9    A.R. 208.

11                           **DISCUSSION**
12                              **III**
13        The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
14   review the Commissioner's decision denying plaintiff disability
15   benefits to determine if his findings are supported by substantial
16   evidence and whether the Commissioner used the proper legal standards
17   in reaching his decision.  Stubbs-Danielson v. Astrue, 539 F.3d 1169,
18   1172 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d
19   1155, 1159 (9th Cir. 2008).

21        "In determining whether the Commissioner's findings are supported
22   by substantial evidence, [this Court] must review the administrative
23   record as a whole, weighing both the evidence that supports and the
24   evidence that detracts from the Commissioner's conclusion." Reddick
25   v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,
26   246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can
27   reasonably support either affirming or reversing the decision, [this
28   Court] may not substitute [its] judgment for that of the

                                  5

Commissioner." <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007),

<u>cert.</u> <u>denied</u>, 128 S. Ct. 1068 (2008); <u>Lingenfelter v. Astrue</u>, 504 F.3d

1028, 1035 (9th Cir. 2007).

     The claimant is "disabled" for the purpose of receiving benefits

under the Act if she is unable to engage in any substantial gainful

activity due to an impairment which has lasted, or is expected to

last, for a continuous period of at least twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

"The claimant bears the burden of establishing a prima facie case of

disability." <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995),

<u>cert.</u> <u>denied</u>, 517 U.S. 1122 (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273,

1289 (9th Cir. 1996).

     The Commissioner has promulgated regulations establishing a five-

step sequential evaluation process for the ALJ to follow in a

disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**,

the ALJ must determine whether the claimant is currently engaged in

substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If not, in the **Second Step**, the ALJ must determine whether the

claimant has a severe impairment or combination of impairments

significantly limiting her from performing basic work activities.  20

C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ

must determine whether the claimant has an impairment or combination

of impairments that meets or equals the requirements of the Listing of

Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20

C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the

ALJ must determine whether the claimant has sufficient residual

functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since her alleged onset date, January 3, 2003.  (Step One).  The ALJ then found that plaintiff "has the following severe combination of impairments: minor degree of pubic diastasis combined with obesity disorder" (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff can perform her past relevant work as a telephone service operator; therefore, she is not disabled.  (Step Four).

**IV**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."  Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly

1  stringent application of the severity requirement violates the Act by

2  denying benefits to claimants who do meet the statutory definition of

3  disabled.  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

4

5       A severe impairment or combination of impairments within the

6  meaning of Step Two exists when there is more than a minimal effect on

7  an individual's ability to do basic work activities.  Webb, 433 F.3d

8  at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see

9  also 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or

10 combination of impairments is not severe if it does not significantly

11 limit [a person's] physical or mental ability to do basic work

12 activities.").  Basic work activities are "the abilities and aptitudes

13 necessary to do most jobs," including physical functions such as

14 walking, standing, sitting, lifting, pushing, pulling, reaching,

15 carrying or handling, as well as the capacity for seeing, hearing and

16 speaking, understanding, carrying out, and remembering simple

17 instructions, use of judgment, responding appropriately to

18 supervision, co-workers and usual work situations, and dealing with

19 changes in a routine work setting.  20 C.F.R. §§ 404.1521(b),

20 416.921(b); Webb, 433 F.3d at 686.  If the claimant meets her burden

21 of demonstrating she suffers from an impairment affecting her ability

22 to perform basic work activities, "the ALJ must find that the

23 impairment is 'severe' and move to the next step in the SSA's five-

24 step process."  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir.

25 2001) (emphasis in original); Webb, 433 F.3d at 686.

26

27      The plaintiff contends that the ALJ erred in failing to find she

28 has a severe mental impairment.  The Court disagrees.

8

1    "A physical or mental impairment must be established by medical

2    evidence consisting of signs, symptoms, and laboratory findings, not

3    only by the claimant's statement of symptoms." 20 C.F.R. §§ 404.1508,

4    416.908; Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).

5    Here, plaintiff, who was represented by counsel at the administrative

6    hearing, A.R. 211, predicated her disability claim on her physical

7    complaints, rather than any mental impairment. See, e.g., A.R. 63-64.

8    Moreover, at the administrative hearing, plaintiff testified she was

9    not receiving any mental health treatment, but she was talking to her

10   pastor. A.R. 221. Nevertheless, plaintiff also testified she had

11   been taking Wellbutrin twice a day for approximately 6 months; but

12   this statement is not supported by the medical record, which shows

13   that although her treating physician diagnosed her with depression and

14   prescribed Wellbutrin, she lost the prescription and never had it

15   filled. A.R. 168-75.

16

17   Although plaintiff's treating physician diagnosed her with

18   depression in June 2006, A.R. 174-75, that diagnosis, by itself, does

19   not demonstrate plaintiff has a severe mental impairment, see, e.g.,

20   Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the

21   [claimant] clearly does suffer from diabetes, high blood pressure, and

22   arthritis, there is no evidence to support his claim that those

23   impairments are 'severe.'"); Matthews v. Shalala, 10 F.3d 678, 680

24   (9th Cir. 1993) ("The mere existence of an impairment is insufficient

25   proof of a disability."), and there is simply no evidence in the

26   record supporting plaintiff's claim of a severe mental impairment.

27   Therefore, the ALJ's implied finding that plaintiff does not have a

28   //

1  severe mental impairment is supported by substantial evidence.[6]

2  Carmickle, 533 F.3d at 1164-65; Ukolov, 420 F.3d at 1006.

3

4                                     V

5      A claimant's residual functional capacity ("RFC") is what she can

6  still do despite her physical, mental, nonexertional, and other

7  limitations.  Mayes, 276 F.3d at 460; Cooper v. Sullivan, 880 F.2d

8  1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff retains

9  the RFC to perform a full range of medium work.[7]  A.R. 15.  However,

10  plaintiff contends the ALJ's decision is not supported by substantial

11  evidence because the ALJ did not address the side effects of her

12  medication and erroneously rejected the opinion of her treating

13  physician, Dr. Carden.

14

15      **A.  Side Effects From Medication:**

16      In determining a claimant's limitations, the ALJ must consider

17  all factors that might have a significant impact on a claimant's

18  _____

19      [6]  Alternately, even if the ALJ should have found plaintiff

20  has a severe mental impairment, his failure to do so was harmless
    error since plaintiff "has not set forth, and there is no

21  evidence in the record, of any functional limitations as a result
    of her [mental impairment] that the ALJ failed to consider."

22  Burch v. Barnhart, 400 F.3d 676, 682-84 (9th Cir. 2005); see also
    Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The

23  court will not reverse an ALJ's decision for harmless error,
    which exists when it is clear from the record that the ALJ's

24  error was inconsequential to the ultimate nondisability
    determination."  (citations and internal quotation marks

25  omitted)).

26
        [7]  Under Social Security regulations, "[m]edium work
27  involves lifting no more than 50 pounds at a time with frequent
    lifting or carrying of objects weighing up to 25 pounds."  20
28  C.F.R. §§ 404.1567(c), 416.967(c).

ability to work, including the side effects of medication.  <u>Erickson</u>
<u>v. Shalala</u>, 9 F.3d 813, 817-18 (9th Cir. 1993); <u>Varney v. Sec'y of</u>
<u>Health & Human Servs.</u>, 846 F.2d 581, 585 (9th Cir. 1988).  "[S]ide
effects can be a 'highly idiosyncratic phenomenon' and a claimant's
testimony as to their limiting effects should not be trivialized."
<u>Varney</u>, 846 F.2d at 585.  Thus, when a claimant testifies she is
experiencing a side effect known to be associated with a particular
medication, the ALJ may disregard the testimony only if he "support[s]
that decision with specific findings similar to those required for
excess pain testimony, as long as the side effects are in fact
associated with the claimant's medication(s)."  <u>Id.</u>

        Here, plaintiff testified she takes Darvocet for pain,[8] and that
medication "seems to . . . make [her] a little dizzy. . . ."[9]  A.R.
217-18.  The ALJ noted this testimony, but concluded it was not
credible to the extent it conflicted with plaintiff's ability to
perform medium work.  A.R. 16-18.  Since plaintiff has not challenged
the ALJ's negative credibility determination, this finding provides a
sufficient basis to reject her testimony about the side effects of
Darvocet.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 960 (9th Cir. 2002)
(ALJ properly rejected claimant's alleged side effects, including
dizziness and difficulties in concentration, with finding claimant

---

        [8]  Darvocet is a "mild narcotic analgesic[] prescribed for
the relief of mild to moderate pain, with or without fever."  <u>The</u>
<u>PDR Family Guide to Prescription Drugs</u>, 177 (8th ed. 2000).
Dizziness is a common side effect of Darvocet.  <u>Id.</u>

        [9]  The plaintiff also stated she previously took Vicodin and
Tylenol with Codeine for pain, and those medications sometimes
made her "blitzed[,]" so her medication was changed to Darvocet.
A.R. 217-18.

1   lacked credibility).  Moreover, plaintiff points to no specific

2   evidence in the record demonstrating she complained to any physician

3   about the side effects of Darvocet.  To the contrary, when examined at

4   Redlands Community Hospital on December 22, 2006, approximately one

5   month before the administrative hearing, plaintiff reported no

6   reaction to the medication she was taking.  A.R. 193.  Therefore, the

7   ALJ did not err in failing to address the alleged side effects from

8   plaintiff's medication.  Greger v. Barnhart, 464 F.3d 968, 973 (9th

9   Cir. 2006); see also McFarland v. Astrue, 288 Fed. Appx. 357, 360 (9th

10  Cir. 2008) ("[Claimant] claims the ALJ failed to consider medication

11  side effects.  However, [claimant] points to no specific evidence in

12  the record where he complained of medication side effects.  To the

13  contrary, the record is replete with statements by [claimant] to

14  medical care providers that he was not experiencing side effects from

15  his various medications.  Thus, we find the ALJ did not err in failing

16  to address side effects of medication in his decision.").[10]

17

18      **B.  Treating Physician's Opinion:**

19      The medical opinions of treating physicians are entitled to

20  special weight because the treating physician "is employed to cure and

21  has a greater opportunity to know and observe the patient as an

22  individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

23  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

24  1999).  Therefore, the ALJ must provide clear and convincing reasons

25  for rejecting the uncontroverted opinion of a treating physician, Ryan

26  v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick,

27

28      [10]   See Fed. R. App. P. 32.1(a); Ninth Circuit Rule 36-3(b).

157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is
contradicted by another doctor, the ALJ may not reject this opinion
without providing 'specific and legitimate reasons' supported by
substantial evidence in the record." <u>Reddick</u>, 157 F.3d at 725;
<u>Tommasetti</u>, 533 F.3d at 1041.

On January 22, 2007, Dr. Carden recited that on January 3, 2003,
plaintiff's pelvis became separated while giving birth, she has
received orthopedic treatment and physical therapy for this condition,
and she currently needs ambulatory assistance.  A.R. 208.  The ALJ
rejected Dr. Carden's opinion that plaintiff "currently needs
ambulatory assistance," finding it "unpersuasive, tentative,
speculative, and unsupported by any citation of clinically
determinable limitations."[11]  A.R. 18.  In making this determination,
the ALJ found that Dr. Carden did not "support this assertion with any
diagnostic findings[,]" did not "articulate with specificity[] the
details of [plaintiff's] instability[] or the nature of the ambulatory
assistance that she needs[,]" and "did not indicate what[,] if any,
prescription of treatment the [plaintiff's] condition requires."  A.R.
18.  Since "[t]he ALJ need not accept the opinion of any physician,
including a treating physician, if that opinion is brief, conclusory,
and inadequately supported by clinical findings[,]" <u>Thomas</u>, 278 F.3d
at 957; <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005), this

---

[11]   The ALJ also stated "Dr. Carden . . . does not appear to
be a treating physician as there are no medical records to show
that Dr. Carden has actually treated the claimant or ever
examined her for that matter."  A.R. 18.  The Court disagrees
since ARMC medical records show Dr. Carden has treated plaintiff.
<u>See</u>, e.g., A.R. 85-87, 89, 119-21.

13

1   reason for rejecting Dr. Carden's opinion is a specific and legitimate

2   reason supported by substantial evidence.

3

4       The ALJ also found that Dr. Carden's opinion is inconsistent with

5   diagnostic findings in the record showing plaintiff's ambulation is

6   unimpaired.  A.R. 18.  This finding, too, is supported by substantial

7   evidence in the record, A.R. 90, 107, 140, and constitutes a specific

8   and legitimate reason for rejecting Dr. Carden's opinion.  Batson v.

9   Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004);

10  Morgan, 169 F.3d at 602; see also Connett v. Barnhart, 340 F.3d 871,

11  875 (9th Cir. 2003) (ALJ properly rejected treating physician's

12  opinion that was inconsistent with other physicians' examination of

13  claimant).  Thus, "the ALJ provided 'specific and legitimate' reasons

14  based on substantial evidence for [his] rejection of [Dr. Carden's]

15  opinion."[12] Tommasetti, 533 F.3d at 1037.  Thus, there is no merit to

16  plaintiff's claim that the ALJ's Step Four determination is not

17  supported by substantial evidence.

18

19                         **ORDER**

20      IT IS ORDERED that: (1) plaintiff's request for relief is denied;

21  //

22  ────────────────

23     [12]  The plaintiff also claims the ALJ failed to fully
    develop the record because he did not recontact Dr. Carden to

24  inquire about the basis for Dr. Carden's opinion.  However, "[a]n
    ALJ's duty to develop the record further is triggered only when

25  there is ambiguous evidence or when the record is inadequate to
    allow for proper evaluation of the evidence."  Mayes, 276 F.3d at

26  459-60; Webb, 433 F.3d at 687.  Here, "[t]he record before the
    ALJ was neither ambiguous nor inadequate to allow for proper

27  evaluation of the evidence."  Mayes, 276 F.3d at 460.  Therefore,

28  the ALJ did not fail to properly develop the medical record.

1  and (2) the Commissioner's decision is affirmed, and Judgment shall be

2  entered in favor of defendant.

3

4  DATE:  December 11, 2008              /s/ Rosalyn M. Chapman
                                        ROSALYN M. CHAPMAN
5                                       UNITED STATES MAGISTRATE JUDGE

6  R&R-MDO\07-1170.mdo
   12/11/08

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28